# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TYI JARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 9432 |
| | ) | |
| NOBEL LEARNING COMMUNITIES, | ) | |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Nobel Learning Communities,

Inc.'s (Nobel) motion for summary judgment. For the reasons stated below, the

motion for summary judgment is granted in its entirety.

## BACKGROUND

Nobel owns and operates a preschool called Chesterbrook Academy

(Chesterbrook). Plaintiff Tyi Jarrett (Jarrett), an African-American female, became

employed as the cook at Chesterbrook on August 1, 2006. Jarrett was also permitted

to work as needed as a "teacher helper" assisting other teachers in the classroom or

relieving them on breaks. In June of 2011, Jarrett notified Administrators at

Chesterbrook (Administrators) that she was pregnant and that she was restricted from

1

performing certain functions of her job. As a result of Jarrett's medical restrictions, Administrators accommodated her needs and adjusted her work duties and provided assistance to her. On July 11, 2011, Jarrett presented additional and stricter medical restrictions from her physician that prevented Jarrett from performing many of the essential functions of her job. In view of such restrictions, Jarrett could not perform her job and no other positions were available at that time. Due to Jarrett's medical restrictions, Jarrett was notified by Nobel personnel

on July 13, 2011 of her placement on leave pursuant to the Family and Medical Leave Act of 1993 (FMLA), 28 U.S.C. § 2615 *et seq.*, effective July 14, 2011. Jarrett began FMLA leave on July 14, 2011, and on July 19, 2011, Jarrett submitted a certificate from her health care provider that contained medical restrictions that prevented her from performing the majority, if not all, of the duties of her job. Jarrett remained on FMLA leave and gave birth to her child on September 16, 2011. After Jarrett's FMLA leave expired on October 6, 2011, Jarrett was not cleared to return to work by her physician. Jarrett requested to take a personal leave of absence from October 7, 2011 through November 20, 2011 and Nobel granted her request. In addition, Administrators informed Jarrett that since she had chosen to take a personal leave of absence, she would not be guaranteed full-time hours when she returned to work.

On November 18, 201, Jarrett's physician cleared Jarrett to return to work without restrictions, and on November 21, 2011, Jarrett returned to work at Chesterbrook with part-time hours as she was previously advised when she chose to

take personal leave. When Jarrett returned to work on a part time basis, Administrators offered Jarrett other opportunities to work additional hours, but Jarrett declined such offers. After returning to work and while working on a part-time basis, between November 21, 2011 and April 25, 2012, Jarrett was absent from work on multiple occasions, she arrived late for work, she left work early without permission at times, she did not sign in and out for work, she violated work policies, she did not follow state health regulations, and she failed to perform routine job duties like cleaning the dishes and putting the food away. Based on her poor performance, on April 25, 2012, Nobel terminated Jarrett's employment.

Jarrett includes in her amended complaint a claim alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*., (Count I), a claim alleging race discrimination in violation of 42 U.S.C. § 1981 (Section 1981) and Title VII (Count II), a claim alleging retaliation in violation of Title VII (Count III), and claims of interference and retaliation in violation of the FMLA (Count IV). Nobel now moves for summary judgment on all claims.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Jarrett initially appeared *pro se* in this matter and the court granted continuances at the request of Jarrett to give her an opportunity to find an attorney. An attorney eventually filed an appearance on May 13, 2013, on behalf of Jarrett and on May 14, 2013, at a status hearing the court set discovery and dispositive motion deadlines. On August 27, 2013, the court extended the deadlines and on October 29, 2013, the court extended the dispositive motions deadline to December 6, 2013, with answers due on January 10, 2014, and replies due on January 24, 2014. On December 6, 2014, Nobel filed the instant motion for summary judgment. Jarrett's

answer was due on January 10, 2014.  However, on January 7, 2014, Jarrett's attorney noticed up a motion to withdraw due to irreconcilable differences and Jarrett indicated to the court that she would proceed *pro se* or might obtain another attorney.  On that date, the court granted Jarrett's attorney leave to withdraw and since the answer to Nobel's motion for summary judgment was due three days later, the court granted an extension until January 24, 2014, for Jarrett or a newly retained attorney to answer the motion for summary judgment, and the court adjusted the reply date to February 7, 2014.  Also, since Jarrett at that juncture was proceeding in the litigation *pro se*, the court ordered Nobel to give the appropriate notice to a *pro se* plaintiff pursuant to Local Rule 56.2.


I.  Failure to Respond to Nobel's Statement of Material Facts

On October 29, 2013, the court stated that dispositive motions in this case were to be filed by December 6, 2013, and that responses to dispositive motions were to be filed by January 10, 2014.  On December 6, 2013, Jarrett's attorney, Denise Mercherson, was granted leave to withdraw as Jarrett's attorney by this court.  On December 6, 2013, Nobel filed the instant summary judgment motion, statement of material facts, and supporting documents.  On that same date, the court ordered Nobel to give notice to Jarrett pursuant to Local Rule 56.2, and the court also gave Jarrett until January 24, 2014 to file her response to Nobel's motion for summary judgment.   The court's docket reflects that on January 9, 2014, Nobel served Jarrett

with a Local Rule 56.2 Notice to Pro Se Litigant Opposing Motion for Summary Judgment, along with a copy of Nobel's motion for summary judgment, statement of material facts, and supporting documents.

The deadline for responding to Nobel's motion for summary judgment passed, and Jarrett failed to file an answer in opposition to Nobel's motion for summary judgment or a response to Nobel's statement of material facts. Therefore, pursuant to Local Rule 56.1, all facts contained in Nobel's statement of material facts are deemed to be undisputed. LR 56.1; *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008)(stating that "a district court has broad discretion to require strict compliance with Local Rule 56.1").

## II. Title VII Sex Discrimination Claim (Count I)

Nobel moves for summary judgment on the Title VII sex discrimination claim. The court notes that Jarrett describes her Title VII discrimination sex claim as a "[p]regnancy and/or [s]ex discrimination claim." (A. Compl. Par. 3-4). Title VII, as amended by the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k), does not create a separate discrimination claim based on a woman's pregnancy. *See Serednyj v. Beverly Healthcare*, LLC, 656 F.3d 540, 547 (7th Cir. 2011)(stating that the PDA merely clarifies that under Title VII, "discrimination based on a woman's

pregnancy is, on its face, discrimination because of her sex.")(internal quotations omitted)(quoting *Hall v. Nalco Co.*, 534 F.3d 644, 646 (7th Cir. 2008)).

A plaintiff who is bringing a Title VII sex discrimination claim and who is seeking to defeat a defendant's motion for summary judgment can proceed under either the direct or indirect method of proof. *Makowski v. Smith Amundsen LLC*, 662 F.3d 818, 823-24 (7th Cir. 2011).

## A. Direct Method of Proof

Nobel maintains that Jarrett cannot proceed under the direct method of proof relating to her Title VII sex discrimination claim. (Mem. 6-10). To proceed under the direct method of proof, a plaintiff must show "through direct or circumstantial evidence, that the employer's decision to take the adverse job action against her was motivated by an impermissible purpose, such as sex." *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 548 (7th Cir. 2011). To proceed under the direct method of proof with circumstantial evidence, a plaintiff must show that there is "a convincing mosaic of circumstantial evidence from which a reasonable juror could infer intentional discrimination by the decision maker." *Id.*

Jarrett has not pointed to any direct evidence of discrimination based on her sex. Nor has Jarrett pointed to a convincing mosaic of circumstantial evidence showing discrimination against Jarrett based on her sex. Jarrett claims that prior to her FMLA leave, she was allegedly denied use of disposable plates and forks and

allegedly did not receive assistance with dishwashing, reaching items, and removing pans from the oven. However, such facts, even if true, fail to suggest any discrimination based on Jarrett's sex. Jarrett also alleges that when Nobel placed her on FMLA leave, she lost benefits and was returned to work as a part-time employee. However, it is undisputed that Jarrett lost benefits due to her failure to pay the premiums for her benefits, and that it was after Jarrett was granted an additional personal leave of absence beyond her FMLA leave, that she was not guaranteed full-time hours. Jarrett fails to show how such facts indicate discrimination against her based on her sex. Jarrett has not pointed to sufficient direct or circumstantial evidence to show sex discrimination on the part of Nobel, and therefore Jarrett cannot proceed under the direct method of proof for her Title VII sex discrimination claim.

## B. Indirect Method of Proof

Nobel maintains that Jarrett cannot proceed under the indirect method of proof relating to her Title VII sex discrimination claim based on her pregnancy. To proceed under the indirect method of proof for a Title VII sex discrimination claim based on her pregnancy, a plaintiff must establish a *prima facie* case of discrimination by showing that: "(1) she was pregnant and her employer knew she was pregnant; (2) she was performing her job duties satisfactorily; (3) she was terminated; and (4) similarly situated, nonpregnant employees were treated more

favorably." *Serednyj*, 656 F.3d at 550. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to point to a "legitimate, nondiscriminatory reason for terminating her," and if such a reason is provided, the burden shifts back to the plaintiff to show that the given reason was a pretext for unlawful discrimination. *Id.* at 551.


1. Job Performance

Jarrett's medical restrictions prevented her from performing her job duties immediately before and during the period she was on FMLA leave and personal leave. As explained above, Nobel's statement of facts are deemed to be undisputed pursuant to Local Rule 56.1. Nobel has stated that from November 21, 2011 through April 25, 2012, Jarrett exhibited a poor attitude, was absent on multiple occasions, arrived late and left work early without permission at times, did not sign in and out for work, violated work policies, did not follow state health regulations, and failed to perform routine job duties like cleaning the dishes and putting the food away. (SF Par. 54-62). Jarrett has not responded to Nobel's statement of material facts and therefore, such facts are deemed to be admitted by Jarrett. In addition, it is undisputed that between November of 2011 through April of 2012, Nobel documented Jarrett's poor performance in multiple performance memorandums. (Ex. E, E-1). The undisputed record also reflects that despite being warned to improve on several occasions by Administrators, Jarrett's behavior and work performance

continued to decline up and until her termination on April 25, 2012. (Ex. E, E-1).

### 2. Similarly-Situated Employees

Employees are considered "similarly situated if they are directly comparable . . . in all material respects." *Serednyj*, 656 F.3d at 551(internal quotations omitted)(quoting *Patterson v. Avery Dennison Corp*., 281 F.3d 676, 680 (7th Cir. 2002). Establishing that an employee is similarly situated, "entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id*. (internal quotations omitted)(quoting *Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 617-18 (7th Cir. 2000)). In Jarrett's deposition and interrogatory responses, Jarrett identified co-workers Jana Miller (Miller), Ashleigh Dowd (Dowd), and Bonnie Alborn (Alborn) as similarly-situated employees. (Ex. F Interrog. 16). However, it is undisputed that Jarrett is not a qualified teacher and that Miller, Dowd, and Alborn, are all current or former qualified teachers at Chesterbrook. (SF Par. 26, 27, 72-74). It is also undisputed that Miller, Dowd, and Alborn have never been disciplined by Nobel for any policy violations or poor performance. (SF Par. 72-74). Jarrett has therefore not identified any comparable employees that would constitute similarly-situated employees. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002)(stating that the plaintiff's "failure to

offer . . . 'comparables'" in regard to other employees "doom[ed] her Title VII and ADEA claims"). Thus, Jarrett has failed to establish that similarly situated, non-pregnant employees were treated more favorably than Jarrett. Jarrett has failed to establish a *prima facie* case under the indirect method of proof or point to evidence indicating animus against her because of her sex. Therefore, Jarrett has not shown that she can proceed under the indirect method of proof for her Title VII sex discrimination claim.

C.  Pretext

Nobel also argues that even if Jarrett had established a *prima facie* case on her Title VII sex discrimination claim, she has not pointed to sufficient evidence to show that Nobel's legitimate non- discriminatory reasons for its actions were a pretext. To meet the pretext requirement, a plaintiff must show that the defendant's given reason for the employment action was a lie to hide unlawful discrimination. *See Martino v. Western & Southern Financial Group*, 715 F.3d 195, 202 (7th Cir. 2013)(stating that "[p]retext means a lie, specifically a phony reason for some action")(internal quotations omitted)(quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002); *Smiley v. Columbia College Chicago*, 714 F.3d 998, 1002-03 (7th Cir. 2013)(stating that the "focus of the pretext inquiry is whether the proffered reason is a lie" and "whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground")(internal quotations

omitted)(quoting in part *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

The undisputed facts show that Nobel accommodated Jarrett, properly took into consideration her medical restrictions in her job assignments, allowed her to take FMLA leave, granted her request for an additional personal leave, permitted her to return to work, offered her other opportunities to work additional hours, and on multiple occasions gave her clear notice of her need to improve and abide by Chesterbrook rules, policies, and job requirements. (SF Par. 28-62). As discussed above, the undisputed facts indicate that Nobel placed Jarrett on FMLA leave because of her need, granted her additional personal leave, and terminated her nine months later on April 25, 2012 for poor performance. Jarrett has not shown that Nobel's stated reasons for placing her on FMLA leave or for terminating her employment are unworthy of belief or a mere pretext for discrimination. Therefore, based on the above, Nobel's motion for summary judgment on the Title VII sex discrimination claim (Count I) is granted.


III.  Section 1981 and Title VII Race Discrimination Claims (Count II)

Nobel moves for summary judgment on the Section 1981 and Title VII race discrimination claims. A plaintiff who is bringing a Section 1981 or Title VII race discrimination claim and who is seeking to defeat a defendant's motion for summary judgment can proceed under either the indirect or direct method of proof. *See*

*Smiley v. Columbia Coll. Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013)(stating that the court applies "the same standards to Title VII and section 1981 race discrimination claims at the summary judgment stage").

## A.  Direct Method of Proof

Nobel maintains that Jarrett cannot proceed under the direct method of proof on her Section 1981 and Title VII race discrimination claims.  (Mem. 10-11).  Under the direct method of proof, a plaintiff "must produce enough evidence, whether direct or circumstantial, to permit the trier of fact to find that h[er] employer took an adverse action against h[er] because of h[er] race."  *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013).  Jarrett has not pointed to any direct or circumstantial evidence of discrimination based on her race.  (Ex. E, F Interrog. 18).  On the contrary, Jarrett indicated in her deposition that she heard no statements referencing her race either when she was placed on leave or when she was terminated from her position.  (Ex. E 130).  Jarrett has not shown any evidence of racial discrimination before, during, or after the time she was placed on FMLA leave that would establish a convincing mosaic of circumstantial evidence showing discrimination on the part of Nobel.  *Serednyj*, 656 F.3d at 548; (SF Par. 28-35).  Therefore, Jarrett cannot proceed under the direct method for her Section 1981 and Title VII race discrimination claims.

### B.  Indirect Method of Proof

Nobel maintains that Jarrett cannot proceed under the indirect method of proof on her Section 1981 and Title VII race discrimination claims.  (Mem. 10-11).  To establish a *prima facie* case for a race discrimination claim, a plaintiff must show: (1) that [s]he "is a member of a protected class," (2) that [s]he met h[er] "employer's legitimate job expectations," (3) that [s]he "suffered an adverse employment action," and (4) that "similarly situated employees outside of the protected class received more favorable treatment."  *Morgan v. SVT, LCC*, 724 F.3d 990, 996 (7th Cir. 2013)(internal quotations omitted)(quoting *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)).

### 1.  Job Performance

Jarrett alleges that she was discriminated against based on her race when Nobel placed her on FMLA leave and that as result she lost benefits and was returned to work as a part-time employee.  (A. Compl. Par. 1-25).  As explained above, Jarrett's medical restrictions prevented her from performing her job duties immediately before and during the period she was on FMLA leave and personal leave.  In addition, it is undisputed that during this period, from November 21, 2011 through April 25, 2012, Jarrett was not meeting her employer's legitimate job expectations.

## 2. Similarly-Situated Employees

Nobel argues that Jarrett has failed to point to similarly-situated employees outside of the protected class who were treated more favorably than Jarrett. As in her Title VII sex discrimination claim, Jarrett has once again identified co-workers Miller, Dowd, and Alborn as similarly-situated employees for purposes of her race discrimination claim. (App. Ex. F Interrog. 16). It is undisputed that Miller, Dowd and Alborn are all Caucasian employees who are outside the protected class. However, as explained above, such individuals are not properly compared to Jarrett. (SF Par. 72-73). Jarrett has therefore not identified any comparable employees that would constitute similarly-situated employees. Thus, Jarrett has failed to point to a similarly-situated employee outside of the protected class who was treated more favorably than Jarrett. Jarrett has failed to make a *prima facie* case of race discrimination under the indirect method of proof or point to evidence indicating animus against her because of her race. Therefore, Jarrett has not shown that she can proceed under the indirect method for her Section 1981 and Title VII race discrimination claims.

## 3. Pretext

Nobel also argues that even if Jarrett had established a *prima facie* case, she has not pointed to sufficient evidence to show that Nobel's legitimate non-discriminatory reasons for its actions were a pretext. As discussed above, the

undisputed facts indicate that Nobel placed Jarrett on FMLA leave because of her medical restrictions and terminated her nine months later on April 25, 2012 for completely unrelated reasons. (SF Par. 28-62). Specifically, Nobel terminated Jarrett for failing to follow management's instructions, failing to follow company attendance and timekeeping policies, and failing to follow health department and State regulations. (SF Par. 62). Jarrett has not shown that Nobel's reason for placing her on FMLA leave or taking any adverse action against Jarrett was a mere pretext for discrimination or that Nobel's reasons for such actions are unworthy of belief. Therefore, based on the above, Nobel's motion for summary judgment on the Section 1981 and Title VII race discrimination claims (Count II) is granted.

## IV.   Title VII Retaliation Claim (Count III)

Nobel moves for summary judgment on her Title VII retaliation claim. Title VII prohibits an employer from retaliating against its employees for opposing discrimination and "this ban extends to acts of retaliation against former employees." *See Matthews v. Wisconsin Energy*, 534 F.3d 547, 558 (7th Cir. 2008)(internal quotations omitted)(quoting *Szymanski v. County of Cook,* 468 F.3d 1027, 1029 (7th Cir. 2006)(stating "[i]n the context of negative employment references, we have defined this to mean the dissemination of false reference information that a prospective employer would view as material to its hiring decision"). A plaintiff who is bringing a Title VII retaliation claim and who is seeking to defeat a defendant's motion for summary judgment can proceed under either the direct or

indirect method. Jarrett alleges Nobel retaliated against her in violation of Title VII subsequent to her termination by providing adverse employment references to potential employers she was interviewing with. (A. Compl. Par. 32-35).

A. Direct Method of Proof

Nobel maintains that Jarrett cannot proceed under the direct method of proof relating to her Title VII retaliation claim. (Mem. 14-15). Under the direct method, a plaintiff can establish a *prima facie* case of Title VII retaliation "by showing that her (1) statutorily protected activity (2) caused (3) an adverse employment action." *Matthews*, 534 F.3d at 558. Jarrett has not pointed to sufficient direct or circumstantial evidence that Nobel ever gave any employers any employment references about her at any time after she was terminated. Jarrett nonetheless argues that Nobel may have told potential employers she was interviewing with that she had a bad attitude, poor attendance record, and committed time theft. (Ex. E. 132-33, 138; F. Interrog. 17). The record reflects that Jarrett initially alleged that adverse employment references by Nobel were to given to multiple employers after July 3, 2012. (A. Compl. Par. 20). However, in Jarrett's deposition and interrogatory responses, Jarrett does not allege that any adverse employment references were given after July 3, 2012. (Ex. E, F). Instead, Jarrett alleged that Nobel made one negative reference to a representative at an Aldi store in Geneva, Illinois in May of 2012. (Ex. F Interrog. 17). While being deposed, Jarrett was unable to identify who from Nobel allegedly gave the negative job reference and was not able to identify the name of the

representative from Aldi who allegedly received the negative job reference. (Ex. E. 132-133, 138; F. Interrog. 17). Apart from her allegation, Jarrett has submitted no evidence or documentation to establish that she ever had an interview or met with anyone from Aldi in May of 2012. In Jarrett's deposition and interrogatory responses, Jarrett has also offered conflicting accounts of what was allegedly stated by the unknown Nobel representative to the unknown Aldi representative. (Ex. E. 132-133, 138; F. Interrog. 17). The undisputed facts also show that the Administrators are unaware of any prospective employer of Jarrett's ever seeking an employment reference about her performance at Chesterbrook after she was terminated. (SF Par. 67). Jarrett has not contradicted the facts set forth by Nobel and therefore those facts are admitted. Since Jarrett has not pointed to sufficient direct or circumstantial evidence to show that she suffered an adverse action after she was terminated from Nobel, Jarrett cannot proceed under the direct method of proof for her Title VII retaliation claim. *Matthews*, 534 F.3d at 558.

## B. Indirect Method of Proof

Under the indirect method of proof for a Title VII retaliation claim, a plaintiff must show that "(1) she engaged in statutorily protected activity and (2) suffered an adverse employment action (3) even though she performed her job satisfactorily (4) when others who were similarly situated did not receive the same treatment." *See id*. (stating that "[a]fter this preliminary showing, the burden of production shifts to the defendant to articulate a legitimate rationale for its adverse employment action," after

which the plaintiff must prove that this reason is pretext). Jarrett cannot proceed under the indirect method of proof because, as explained above, she has failed to point to sufficient evidence that she suffered an adverse action after she was terminated from Nobel. Additionally, as explained above, Jarrett has not satisfied the satisfactory job performance element. Thus, Jarrett cannot proceed under the indirect method for her Title VII retaliation claim.

### C. Pretext

The undisputed facts show that the Administrators are unaware of any prospective employer of Jarrett's ever seeking an employment reference about Jarrett's performance at Chesterbrook after Jarrett was terminated. (SF Par. 67). Further, Jarrett has not pointed to sufficient direct or circumstantial evidence that Nobel ever gave any prospective employers any employment references about Jarrett at any time after she was terminated. Even if Jarrett can provide that representatives from Nobel gave an employment reference about Jarrett as she suggests, Jarrett has failed to establish that legitimate non-discriminatory reasons for such actions were a pretext. As explained above, Nobel terminated Jarrett for poor performance, including failing to follow management's instructions, failing to follow company attendance and timekeeping policies, and failure to follow health department and State regulations. (SF Par. 62). Jarrett has not shown that the employment references she alleges Nobel gave to Aldi representatives would be unworthy of

belief or a mere pretext for retaliation. Therefore, based on the above, Nobel's

motion for summary judgment on the Title VII retaliation claim (Count III) is

granted.


V.    FMLA Claims (Count IV)

Nobel moves for summary judgment on the FMLA claims of interference and

retaliation.


A.  FMLA Interference Claim

The FMLA provides that it is "unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise rights under the FMLA."

29 U.S.C. § 2615(a)(1);  *James v. Hyatt Regency*, 707 F.3d 775, 780 (7th Cir.

2013)(quoting 29 U.S.C. § 2615(a)(1)).  For an FMLA interference claim, a plaintiff

must show that "(1) [she] was eligible for the FMLA's protections; (2) [her] employer

was covered by the FMLA; (3) [she] was entitled to take leave under the FMLA; (4)

[she] provided sufficient notice of [her] intent to take leave; and (5) [her] employer

denied her FMLA benefits to which [s]he was entitled."  *Id.* (internal quotations

omitted)(quoting *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir.

2010)).

Jarrett alleges that Nobel interfered with her rights in violation of the FMLA

when it "require[d] [] her to take maternity leave two months before her due date of

September, 2011." (A. Compl. Par. 36-38). The undisputed facts show that on July 13, 2011 certain medical restrictions were in place that completely prevented Jarrett from performing the majority of her duties. (Ex. E-1). Jarrett alleges that at that time Nobel was aware that Jarrett intended to take FMLA leave for her pregnancy in September of 2011. (A. Compl. Par. 13). After it was determined that Jarrett had to be placed on immediate leave due to her medical restrictions, Nobel Administrators had a responsibility under the FMLA to meet with Jarrett and inform her that the leave would be designated as FMLA leave. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002)(stating the FMLA "regulations make it the employer's responsibility to tell the employee that an absence will be considered FMLA leave"); (SF Par. 40). It is undisputed that on July 13, 2011, Administrators met with Jarrett and informed her that, due to her current medical restrictions, Nobel was placing her on leave effective July 14, 2011 and that since the leave involved pregnancy, the leave would be designated as FMLA leave. (SF Par. 40-45). It is also undisputed that Jarrett began her FMLA leave on July 14, 2011 and remained on FMLA leave until October 6, 2011 when Nobel granted her request for an additional personal leave of absence until November 20, 2011. (SF Par. 45-52). There is no evidence that Jarrett at the time objected to her being placed on FMLA leave. Only after her termination months later for poor performance has Jarrett in retrospect alleged violations of her FMLA rights. Jarrett has not shown how Nobel's decision to place

Jarrett on FMLA leave was violative of the FMLA or in any manner interfered with her rights under the FMLA. (A. Compl. Par. 1-38; Ex. E., E-1. F). The undisputed facts show that under the facts and circumstances in this case Nobel provided Jarrett with all protections that she was entitled to under the FMLA. (SF 1-74). Therefore, Nobel's motion for summary judgment on the FMLA interference claim is granted.

### B.  FMLA Retaliation

The FMLA permits an eligible employee to take up to twelve weeks of leave per year "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). FMLA retaliation claims are evaluated under the same standard used in Title VII retaliation claims. *See James*, 707 F.3d at 781(stating "[a] plaintiff making a claim for retaliation under the FMLA can proceed under the direct or indirect methods of proof"). If the employee establishes a *prima facie* case under either method, "the burden shifts to the employer to produce a non-discriminatory reason for its action" and if the employer is able to meet this burden "the burden shifts back to the employee to demonstrate that the proffered reason is pretextual." *Id*. Jarrett alleges that Nobel retaliated against her in violation of the FMLA when it "require[ed] [] her to take maternity leave two months before her due date of September, 2011." (A. Compl. Par. 36-38).

1.  Direct Method of Proof

Under the direct method of proof relating to an FMLA retaliation claim, an employee "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Nobel maintains that Jarrett cannot proceed under the direct method of proof. The court notes that Jarrett has failed to sufficiently allege or even identify the specific action she allegedly took that allegedly caused Nobel to retaliate against her. (A. Compl. 1-20, 36-38; Ex. E). Jarrett has also failed to sufficiently establish how being placed on FMLA leave was a materially adverse action. *See James*, 707 F.3d at 781(stating that employee's FMLA "retaliation claim, which is really just a reformulation of h[er] FMLA interference claim, fails because [employee] produced no evidence of a materially adverse action"). The undisputed facts also show that on July 13, 2011, because of her medical restrictions, Jarrett was unable to perform the majority of her duties. (Ex. E-1). The undisputed facts show that at that time Jarrett was not qualified to teach and no other positions were available at Chesterbrook to accommodate her in view of her restrictions. (SF Par. 26-27, 38-39). Jarrett alleges that at that time Nobel was aware that Jarrett intended to take FMLA leave for her pregnancy in September of 2011. (A. Compl. Par. 13). After it was determined that

Jarrett had to be placed on immediate leave due to her medical restrictions, the Administrators had a responsibility under the FMLA to meet with Jarrett and inform her that the leave would be designated as FMLA leave. *See Ragsdale*, 535 U.S. at 87 (stating the FMLA "regulations make it the employer's responsibility to tell the employee that an absence will be considered FMLA leave"); (SF Par. 40). It is undisputed that Administrators met with Jarrett on July 13, 2011 and informed her that due to her current medical restrictions Nobel was placing her on leave effective July 14, 2011 and that since the leave involved pregnancy the leave would be designated as FMLA leave. (SF Par. 40-45). It is also undisputed that Jarrett began her FMLA leave on July 14, 2011 and remained on FMLA leave until October 6, 2011 when Nobel granted her request for an additional personal leave of absence until November 20, 2011. (SF Par. 45-52). Jarrett has failed to point to sufficient, direct or circumstantial, evidence that Nobel took a materially adverse action when it placed Jarrett on FMLA leave. To the contrary, the undisputed facts show that Nobel was in compliance with the FMLA regulations and did everything in its power to ensure that, under the circumstances, Jarrett was placed under FMLA leave and was made aware of and able to exercise all of her rights under the FMLA. (SF Par. 45-52). Thus, Jarrett cannot proceed under the direct method of proof for her FMLA retaliation claim.

## 2.  Indirect Method of Proof

Under the indirect method of proof relating to an FMLA retaliation claim, an employee "must establish a *prima facie* case by proving that she (1) engaged in a statutorily protected activity; (2) met her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Caskey*, 535 F.3d at 593.  Jarrett cannot proceed under the indirect method because, as explained above, she failed to point to sufficient evidence that Nobel took a materially adverse action when it placed Jarrett on FMLA leave.  Additionally, Jarrett failed to establish that she was performing her job duties satisfactorily or point to similarly-situated employees outside the protected class.  Thus, Jarrett cannot proceed under the indirect method of proof for her FMLA retaliation claim.

## 3.  Pretext

Nobel also argues that even if Jarrett had established a *prima facie* case, she has not pointed to sufficient evidence to show that Nobel's legitimate non-discriminatory reasons for their actions were a pretext.  (Mem. 12-15).  The undisputed facts show that Nobel accommodated Jarrett, followed her physician's recommendations, properly took into consideration all of her medical restrictions, notified and advised her of her rights under the FMLA, and placed her on FMLA

leave when her medical restrictions prevented her from performing the majority of her duties. (SF Par. 28-62). Jarrett has not shown that Nobel's stated reason for placing her on FMLA leave is unworthy of belief, violative of the FMLA, or a mere pretext for retaliation. Therefore, Nobel's motion for summary judgment on the FMLA retaliation claim is granted.

## CONCLUSION

Based on the foregoing analysis, Nobel's motion for summary judgment is granted in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:  April 21, 2014